UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:20-cr-00439-SRC-SPM |
| PATRICK L. COCKRELL, | ) ) | |
| Defendant. | ) ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are Defendant Patrick L. Cockrell, represented by defense counsel Nick A. Zotos, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Federal Rule of Criminal Procedure Rule 11(c)(1)(B), and in exchange for the defendant's voluntary waiver of indictment and voluntary plea of guilty to Counts 1 through 3 in the superseding information, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the superseding information.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that, at the time of sentencing, neither party shall request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. In addition, the United States agrees not to charge the defendant with drug distribution resulting in death stemming from the victim's death referenced below on or about August 16, 2020.

## 3. ELEMENTS:

As to Count 1, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1.  Beginning on an unknown date, but at least on or about December 19, 2019, and continuing up to and including August 19, 2020, within the Eastern District of Missouri, the defendant and other persons reached an agreement or came to an understanding to distribute to another individual and possess with intent to distribute to another individual a mixture or substance containing a detectable amount of fentanyl;

2.  The defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

2

3. At the time the defendant joined in the agreement or understanding, he knew of the illegal purpose of the agreement or understanding.

As to Count 2, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. On or about August 19, 2020, in the Eastern District of Missouri, the defendant knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl to another person; and

2. At the time of the distribution, the defendant knew that the fentanyl he was distributing was a controlled substance.

As to Count 3, the defendant admits to knowingly violating Title 18, United States Code, Section 924(c), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. On or about August 19, 2020, in the Eastern District of Missouri, the defendant committed the crime charged in Count 1 of the superseding information;

2. The defendant knowingly possessed a firearm; and

3. The defendant's possession of the firearm was in furtherance of the crime charged in Count 1 of the superseding information.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

3

In August of 2020, investigators with the Drug Enforcement Administration ("DEA") learned of an overdose death that occurred in Creve Coeur, Missouri. The victim was identified as M.V. (hereinafter referred to as the "victim"). Subsequent investigation revealed that the victim's source of supply for fentanyl was Defendant Patrick L. Cockrell. After learning of the overdose death, investigators searched the victim's cellular telephone, which revealed electronic messages between the victim and Cockrell on August 16, 2020. The investigators know from their training and experience that, in those electronic messages, Cockrell and the victim arranged a sale of fentanyl from Cockrell to the victim.

On August 19, 2020, investigators placed a series of recorded phone calls and text messages to Cockrell. During those recorded phone calls and text messages, Cockrell agreed to sell an undercover DEA investigator $200.00 worth of fentanyl. Also during those recorded phone calls and text messages, Cockrell directed the undercover officer to meet him for the drug deal that day at 626 North Kingshighway Boulevard, St. Louis, Missouri, 63108 (within the Eastern District of Missouri).

Later that day, the undercover officer and other members of the investigative team went to the proposed meeting location and waited for Cockrell. Shortly after arriving, investigators saw a truck pull on to the lot. The truck, with Cockrell sitting in the passenger seat, backed into a parking space with its passenger door facing the car door of the undercover officer. Once the truck stopped, Cockrell opened his door, leaned out, and then handed the undercover officer a knotted plastic bag containing approximately 30 black and white capsules.[1] In exchange, the undercover officer

---

[1] The purported fentanyl that was provided to the undercover investigator by Cockrell was later submitted to the St. Louis Crime Laboratory for analysis. That analysis revealed that the substance tested positive for the presence of fentanyl and weighed less than four grams.

4

provided Cockrell with the previously agreed-upon $200.00. After completing the drug deal, the driver of Cockrell's truck pulled out of the parking space to leave the parking lot. At that time, members of the investigative team conducted a stop of the truck and detained all of the truck's occupants.

After the traffic stop, members of the investigative team conducted a search of the truck and each occupant inside the truck. Those searches revealed that both back-seat passengers possessed loaded firearms, a digital scale, and pre-packaged marijuana. A search of the driver and the area where he was seated revealed several bags of suspected marijuana, a scale, and a prescription bottle containing numerous suspected oxycodone pills. A search of Cockrell (who was in the truck's front passenger seat) revealed that he was in possession of the previously mentioned $200.00, which was provided to him by the undercover officer.

Cockrell and the other occupants of the truck were all arrested. After his arrest, Cockrell was escorted to an interview room for an audio and video recorded interview. During the interview, Cockrell waived his *Miranda* rights and agreed to answer the officers' questions. Answering those questions, Cockrell admitted to selling fentanyl to the undercover officer earlier that day. Cockrell also admitted to knowing the victim, and acknowledged selling fentanyl to the victim within the previous week.

At the same time that Cockrell was being interviewed, other members of the investigative team went to Cockrell's residence, in St. Louis, Missouri. Upon arrival at the residence, investigators introduced themselves to Cockrell's live-in-girlfriend, who provided the officers with written consent to search the residence. During the search of Cockrell's residence, investigators

5

located a loaded firearm in the master bedroom.[2] Also in Cockrell's residence, investigators located items that—according to the training and experience of the investigators—are commonly associated with the packaging and distribution of fentanyl for resale (including electric grinders, a scale, empty capsules, cutting agents, and a box of sandwich bags). Investigators know from their training and experience that drug traffickers often possess firearms to protect narcotics from theft. Cockrell admits that that he possessed the firearm that was seized from his residence to further his narcotics trafficking.

During his interview, Cockrell admitted to investigators that the drug paraphernalia and the firearm that were found in his residence all belonged to him. Also during his interview, Cockrell admitted to selling fentanyl over the prior eight months. According to Cockrell, he would receive raw fentanyl from his source of supply with whom he conspired to distribute fentanyl. After receiving the raw fentanyl from his source of supply, Cockrell would then dilute the fentanyl for redistribution. Cockrell estimated that he has received fentanyl from his source of supply on more than one occasion.

## 5. STATUTORY PENALTIES:

A.    **Counts 1 and 2:** The Defendant fully understands that the maximum possible penalties provided by law for the crime to which the defendant is pleading guilty under Counts 1 and 2 are imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine.  The Court shall also impose a period of supervised release of not less than three (3) years nor more than life.

---

[2] The firearm was identified as a black, FNS-9, 9mm, semi-automatic pistol (SN: GKU0146201).

**B.**     **Count 3:** The Defendant fully understands that the maximum possible penalties provided by law for the crime to which the defendant is pleading guilty under Count 3 are imprisonment of not more than life imprisonment, a fine of not more than $250,000, or both such imprisonment and fine.  The Court shall also impose a period of supervised release of not more than three (3) years.  **The Defendant also fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least five (5) years, to be served consecutive to the sentence imposed in Count 1.**

**6.  U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that he following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**a.  Chapter 2 Offense Conduct:**

**(1)  Base Offense Level:**  The parties agree that the base offense level is 12, as found in Section 2D1.1(c).  The parties agree that the quantity of fentanyl for which the defendant is accountable, including relevant conduct, is less than 4 grams, resulting in the agreed Base Offense Level.

**b.  Chapter 3 Adjustments:**

**(1)  Acceptance of Responsibility:**  The parties agree that two levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government

7

receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

c. **Estimated Total Offense Level:** Based on these recommendations, the parties estimate the Total Offense Levels are as follows:

(1)     **Counts 1 and 2:** The parties estimate that the Total Offense Level for Counts 1 and 2 is 10, unless the defendant is a Career Offender. Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender.

(2)     **Count 3**: Pursuant to U.S.S.G. 2K2.4(b), the sentencing guideline range for Count 3 is the minimum term of imprisonment required by statute (60 months).

d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

e. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen

all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the Defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28,

United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code,

10

Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

**d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.  Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.  Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration and costs of supervision.  The Defendant agrees that any fine imposed by the Court will be due and payable immediately.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel.  The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.  Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation.  In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory.  Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the

government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.  The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12.  NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

3/24/2021
_____
Date

_____
Derek J. Wiseman

13

Assistant United States Attorney

_____
3 - 28 - 21
Date

_____
Patrick Lamont Cockrell
Defendant

_____
3 - 28 - 21
Date

_____
Nick A. Zotos
Attorney for Defendant

14